Submitted on record and briefs January 25, affirmed July 17, 1985

In the Matter of the Compensation of
Michael R. Fischer, Claimant.

HOWARD COOPER CORPORATION,
*Petitioner,*

*v.*

FISCHER,
*Respondent.*

(81-10100; CA A30550)

703 P2d 1029

David O. Horne, Beaverton, filed the brief for petitioner.

Rick W. Roll, and Roll, Westmoreland and Lavis, P.C., Tillamook, filed the brief for respondent. On July 11, 1984, Rick W. Roll withdrew as counsel for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The issue in this workers' compensation case is whether the insurer is liable for payment for claimant's October 6, 1981, back surgery under ORS 656.245(1):

> "For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability. Such medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical restorative services. The duty to provide such medical services continues for the life of the worker."

The referee and the Workers' Compensation Board held that the insurer was liable. We affirm.

Claimant suffered compensable injuries to his low back in 1967 and 1968. As a result, Dr. Groth performed a fusion from L5 to the sacrum on August 5, 1969. Claimant continued to experience back pain, pain and numbness in his legs and headaches. Over the years, he consulted several doctors, none of whom recommended further surgery. There is medical evidence of a psychological component of his problems. In April, 1981, Dr. Berselli began to treat claimant, and in September, 1981, he reported that there was evidence of spinal stenosis at the L3-4 level associated with a mild degree of disc bulging. He stated that claimant's complaints and physical findings were sequelae of his original injury. He performed a lumbar laminectomy at the L3-4 level on October 6, 1981. The insurer denied responsibility for payment for that operation.

Dr. Berselli relates the need for the laminectomy to trauma induced during the 1969 fusion operation. He testified that it was probable that the exposure of the lamina at the L3-4 level during the 1969 operation caused the thickening of the lamina and the resulting stenosis present in 1981. There is no medical evidence refuting his opinion. The insurer relies heavily upon Dr. Groth's surgical note of the 1969 operation in attempting to undermine Dr. Berselli's opinion. In the note, Dr. Groth stated that, during that operation, the "incision was

made on the right side, carried down exposing the transverse process of L5 and the sacrum" and that a "similar incision was made on the opposite side." The insurer argues that that statement establishes that only the L5-sacrum level was exposed and that the L3-4 level was not. The insurer's analysis of the chart note does not necessarily follow from the words used. Although the note states that the L5-sacrum level was exposed, it does not state that the higher L3-4 level was not also exposed. Dr. Berselli testified that, even though the fusion occurred at the lower level, the excision must be made at a higher level to reach the bone at the L5 level.

Claimant has sustained his burden of proving that the laminectomy was performed for a condition resulting from his compensable injuries. It is more probable than not that the need for the laminectomy resulted from complications arising out of the 1969 fusion, which in turn was necessitated by his compensable injuries.

Affirmed.